IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO


Civil Action No. 06–cv–00282–EWN–CBS

SCOTT L. HOWARD,

      Plaintiff,

v.

MAJOR LLOYD WAIDE,
individually,
MAJOR MARY COX-BERGMAN,
individually,
CAPTAIN M. NEGLEY,
individually,
CAPTAIN JOHN CLARKSON,
individually,
LIEUTENANT HALLIGAN,
individually,
LIEUTENANT DAVID BACKER,
individually, and
ANTHONY DECESARO, individually,

      Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**Magistrate Judge Craig B. Shaffer**

      The matters before the court are as follows:

      1.      Defendant DeCesaro's Motion to Dismiss First Amended Complaint [#53],

filed June 1, 2006; Plaintiff's Response [#57], filed June 15, 2006; and

Defendant DeCesaro's Reply [#62], filed June 22, 2006; and

> 2.   Defendants Broaddus[1], Waide, Cox-Bergman, Negley, Clarkson, Halligan,
> and Backer's Motion for Summary Judgment, or in the Alternative, Motion
> to Dismiss Amended Complaint [#66], filed July 10, 2006;  Plaintiff's
> Response [#78], filed August 1, 2006; and Defendants Broaddus, Waide,
> Cox-Bergman, Negley, Clarkson, Halligan, and Backer's Reply [#84], filed
> August 18, 2006.

Pursuant to the Order of Reference [#10], filed, March 13, 2006, this civil action
was referred to the Magistrate Judge to, *inter alia*, "... conduct hearings and to submit to
me proposed recommendations for my disposition of any motion (whether filed before
or after entry of this order) to award injunctive relief, to award judgment on the
pleadings, to grant summary judgment, or to dismiss the entire action involuntarily."  By
a Memorandum [#55], dated, June 1, 2006, Defendant DeCesaro's Motion to Dismiss
First Amended Complaint was referred to this court for a recommendation.  By a
Memorandum [#68], dated, July 11, 2006,  Defendants Broaddus, Waide, Cox-
Bergman, Negley, Clarkson, Halligan, and Backer's Motion for Summary Judgment, or
in the Alternative, Motion to Dismiss Amended Complaint was referred to this court for
a recommendation.  The court has reviewed the Motions, the Responses, the Replies,
the exhibits, the entire case file, and the applicable law and is sufficiently advised in the
premises.

## I.   Background.

This is a **42 U.S.C. § 1983** prison inmate civil rights case.  Plaintiff was convicted

---

[1] Defendant Broaddus is no longer listed as a Defendant in Plaintiff's Amended Complaint.

of numerous theft charges in various jurisdictions and for Federal Tax Code violations.

Currently, Plaintiff is housed at the Arkansas Valley Correctional Facility ("AVCF").

Plaintiff was initially housed at the Fremont Correctional Facility ("FCF").  There, he

was recognized by members of the 2-11 Crew, who began to threaten him and charge

him "rent."  The 2-11 gang members allegedly ordered Plaintiff to have friends outside

the prison send money orders to third-party gang members for the benefit of the Crew.

Plaintiff claims that eventually he was forced into prostitution and forced to perform

sexual acts on inmates in exchange for money that was paid to the Crew via canteen

items.  Plaintiff was sexually assaulted three times by 2-11 gang members while

housed at FCF.  When Plaintiff reported the incidents to FCF officials, he was

transferred to the Sterling Correctional Facility ("SCF") of the Colorado Department of

Corrections ("CDOC") "for the sole purpose of protecting him from further assault at the

hands of the 2-11 Crew members."  (Amd. Compl., p. 6).

On or about March 1, 2005, Plaintiff arrived at SCF and was placed on Living

Unit 01, the intake unit.  He met with a case manager, Ms. Morris, who is not a

defendant in this action.  Plaintiff claims that he told Morris that he had been

transferred from FCF to SCF because he had been sexually and physically assaulted

by 2-11 Crew members.  According to Howard, Morris acknowledged that "2-11 are

everywhere and they have a grapevine."  (Id.).  She then indicated that Plaintiff would

be assigned a permanent case manager when he was moved to the general population

housing unit.        On or about March 4, 2005, Howard was assigned to Unit 2 at

SCF.  He met his assigned case manager, Mr. Manning and recounted his experiences

3

with the 2-11 Crew at FCF.  Manning is not listed as a defendant in this action.  Plaintiff indicated to Manning that the 2-11 Crew had created serious problems for him at FCF, which warranted his transfer to SCF.

On or about April 27, 2005, Plaintiff was transferred to SCF Living Unit 33. Immediately upon his arrival at Unit 33, Plaintiff saw a 2-11 gang member from FCF whom he recognized.  That inmate approached Plaintiff on the recreation yard and advised him that a FCF 2-11 Crew member named "Ghost" had a friend housed at SCF.  Plaintiff alleges that "Ghost" had been responsible for harassment and abuse he suffered at FCF.  Plaintiff claims he immediately reported this conversation to Defendant Backer, a case manager at SCF, advising him that two inmates at SCF were in contact with 2-11 Crew members at FCF.  Plaintiff claims that he specifically told Backer that the SCF inmates had contact with Ghost, but that Backer did not report "the potential threat" to Plaintiff's safety.  Plaintiff was housed at SCF during the events giving rise to his Amended Complaint.

On April 27, 2005, Plaintiff filed a Step I Grievance against Defendant Backer, asking to be transferred to a different housing unit because he had been approached by a 2-11 Crew member while residing at SCF-East.  On May 24, 2005, Defendant Clarkson, also a case manager at SCF, denied the Step I Grievance, stating that Plaintiff did not presently feel threatened, but rather was informing them that 2-11 gang members resided at SCF-East, and that "[they] couldn't keep [Plaintiff] away from all 211 (sic) members."  (Amd. Compl., p. 7).  Defendant Clarkson concluded that "facility placement is classification and cannot be grieved."  (Amd. Compl., p. 7).  Defendant

4

Halligan, another case manager at SCF, advised Plaintiff that SCF was a "prison and not a playground" and that Plaintiff would "have to learn to live" with threats. (Id.). Defendant Halligan admitted that threats exist at SCF, but added that "crime just doesn't pay." (Id., p. 8).

On or about May 27, 2005, Plaintiff filed a Step II Grievance, which was initially assigned to Defendant Cox-Bergman, a manager at SCF, for a response. Defendant Cox-Bergman passed the Step II Grievance on to Defendant Negley, a captain at SCF. Defendant Negley responded to the Step II Grievance by indicating Plaintiff did not "get to select CDOC facility placement." (Amd. Compl., Ex. 2).

On or about June 10, 2005, Plaintiff filed a Step III Grievance with CDOC headquarters to which Defendant DeCesaro responded. Plaintiff claims that even though Defendant Decesaro is required by Administrative Regulation to respond to Step III Grievances within 45 days, he did not respond to Plaintiff's until February 2, 2006, some eight months later. Defendant DeCesaro ultimately denied Plaintiff's Step III Grievance, stating that "[h]ousing placement is a classification matter and not grievable." (Amd. Compl., Ex. 3, p. 2). Plaintiff claims that Defendant DeCesaro's delay in responding "left him in immediate danger of physical harm." (Amd. Compl., p. 8).

In early August, 2005, Plaintiff was transferred from SCF Unit 33 to SCF Unit 32 at Defendant Backer's request. Defendant Backer advised Plaintiff that he "filed too many grievances." (Amd. Compl., p. 9). Upon his arrival at Unit 32, Plaintiff was approached by 2-11 Crew members and told that he needed to pay "rent."

5

Approximately six days after being moved to Unit 32, a 2-11 Crew member showed Plaintiff a letter from Ghost that had been mailed from another CDOC facility.  This letter purportedly authorized 2-11 Crew members at SCF to charge Plaintiff rent and to "make [Plaintiff] cover debts with his ass."  (Amd. Compl., p. 9).

Approximately three days later, a 2-11 Crew member forced Plaintiff into a bathroom stall, physically assaulted Plaintiff, and ordered Plaintiff to perform oral sex on him.  On or about August 20, 2005, the same 2-11 gang member coaxed Plaintiff into the cell of another 2-11 Crew member's cell, who forced Howard to perform oral sex on him and then raped Plaintiff.

On August 23, 2006, Howard was transferred to Tennessee via the Interstate Agreement on Detainers.  When he returned to SCF on October 5, 2005, Plaintiff was placed in Living Unit 22.  Shortly thereafter, Plaintiff was transferred to SCF Unit 2. Howard claims that immediately upon his arrival on Unit 2, a 2-11 Crew member approached him about assisting the gang with financial fraud schemes.  The Crew member then showed Howard a piece of paper with Plaintiff's parent's address and telephone number.  Plaintiff felt he had no choice but to assist the gang with the fraud scheme to protect his family.  The 2-11 Crew provided Plaintiff with data on individuals which was to be used to create false W-2 forms.  The refunds were to be routed to 2-11 Crew members.  On January 3, 2006, Plaintiff's cell was searched.  Following the search, Plaintiff was "cornered by 2-11 Crew members asking why intelligence officers had searched his cell," and accusing him of snitching.  (Amd. Compl., p. 12).  Plaintiff claims that this verbal attack and "threats of reprisal" sent him into a panic attack that

6

resulted in hospitalization at Sterling Regional MedCenter for three days.  Howard

claims that he suffered from hypertension, tachycardia, tachyapnea, hyperventilation,

stress, anxiety, and nausea.

Following this incident, Plaintiff and his family were again threatened if they did

not provide the 2-11 Crew with $300,000 by the end of March, 2006.  Plaintiff claims he

informed "defendants" of these threats at various times between January and February,

2006.  Despite this, on February 1, 2006, Howard was threatened and forced to have a

friend send a $500.00 money order to an outside address for the benefit of a 2-11 Crew

member.  Plaintiff claims "[d]espite the defendants' knowledge of such, they did nothing

to intervene."  (Amd. Compl., p. 14).  As a result, on February 13, 2006, Plaintiff was

again physically assaulted.

Finally, on February 14-15, 2006, Howard provided approximately four hours of

taped testimony against 2-11 Crew members.  Yet, Defendants placed him back into

the same living unit with people against whom he had testified.  On February 16, 2006,

Plaintiff demanded that he be placed in segregation for his protection.  Lt. Katzmyer,

who is not listed as a defendant in this case, placed Plaintiff in segregation and had

medical personnel note the bruising on Plaintiff's arm from the earlier 2-11 gang

assault.  Plaintiff remained in segregation until February 23, 2006, as a result of Lt.

Katzmyer's reports.

Howard was transferred to Arkansas Valley Correctional Facility ("AVCF") for his

protection.  However, he currently shares a cell with a 2-11 Crew member.

Plaintiff brings his Amended Complaint for money damages[2] and injunctive relief. Plaintiff claims[3] that Defendants violated his Eighth Amendment rights through their deliberate indifference to Plaintiff's status as a target of the 2-11 gang.  Plaintiff claims that as a result of that indifference, he was physically and sexually assaulted, raped, and extorted out of thousands of dollars.  (Amd. Compl., p. 2).  He now claims that he suffers from Post-Traumatic Stress Disorder.  (Id.).

## II.     Standard of Review.

Since Plaintiff appears *pro se,* this court will construe liberally his pleadings and other papers, holding them to a less stringent standard than formal papers filed by attorneys.  ***Hall v. Bellmon,*** 935 F.2d 1106, 1110 (10th Cir. 1991).

### A.     Motion to Dismiss.

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  **FED. R. CIV. P. 12(b)(6).**  When reviewing a Rule 12(b)(6) motion to dismiss, the court accepts the well-pleaded allegations of the complaint as true and construes them in the light most favorable to the Plaintiff.  ***Ramirez v. Dep't of Corr.,*** 222 F.3d 1238, 1240 (10th Cir. 2000) (citation omitted).  The court should not dismiss a complaint under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can

---

[2]  Plaintiff has dropped his request for injunctive relief.  *See*  Plaintiff's Motion to Dismiss Claims Against Each Defendant in His/Her Official Capacity [#85], filed September 7, 2006: "Plaintiff does not now, nor will he ever, seek injunctive relief in this matter."

[3]  Initially, Plaintiff asserted two claims for relief.  However, at the May 26, 2006, motions hearing, the court struck, at Howard's request, Count I, leaving Count II as the sole, remaining claim for relief.  Count II alleges that Defendants were deliberately indifferent to a substantial risk of harm, which deprived Plaintiff of his rights under the Eighth Amendment.

prove no set of facts in support of his claim which would entitle him to relief." *Ramirez,*
222 F.3d at 1240 (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)).

      **B.**    **Summary Judgment Standard.**

      A moving party is entitled to summary judgment when the evidence indicates that
there is no genuine issue of material fact and that the moving party is entitled to
judgment as a matter of law. FED. R. CIV. P. 56(c). A requirement of a genuine issue of
fact means that the evidence is such that a reasonable jury could return a verdict for
the non-moving party. The moving party has the burden of showing the absence of a
genuine issue of material fact. This burden may be met by showing that there is an
absence of evidence to support the non-moving party's case. *Celotex Corp. v.*
*Catrett,* 477 U.S. 317, 325 (1986). "[A] party opposing a properly supported motion for
summary judgment may not rest on mere allegations or denials of his pleading, but . . .
must set forth specific facts showing that there is a genuine issue for trial." *Anderson,*
477 U.S. 242, 256 (1986) (internal citations/quotations omitted).

      In applying the summary judgment standard, the court construes the factual
record and any reasonable inferences therefrom in a light most favorable to the party
opposing summary judgment. *Blue Circle Cement, Inc. v. Bourad of County*
*Comm'r,* 27 F.3d 1499, 1503 (10th Cir. 1991). However, the mere existence of some
alleged factual dispute will not defeat an otherwise properly supported motion for
summary judgment. *FDIC v. Hulsey,* 22 F.3d 1472, 1481 (10th Cir. 1994). To
constitute a genuine factual dispute, there must be more than a scintilla of evidence;
summary judgment may be granted if the evidence is merely colorable or is not

significantly probative.  ***Vitkus v. Beatrice, Co.,*** 11 F.3d 1535, 1539 (10th Cir. 1993).

"[T]he relevant inquiry is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" ***Bingaman v. Kansas City Power & Light Co.,*** 1 F.3d 976, 980 (10th Cir. 1993) (quoting ***Anderson,*** 477 U.S. at 251-52).

Because "[a] verified pleading may itself be treated as an affidavit if the facts asserted are within the pleader's personal knowledge," ***Jaxon v. Circle K Corp.,*** 773 F.2d 1138, 1139 n. 1 (10th Cir.1985),  the factual allegations in Plaintiff's Amended Complaint[4] are taken as true and construe in the light most favorable to him.  ***May v. Okla. Dept. of Corr.,*** 2000 WL 633244, *3 (10th Cir. 2000).  Nonetheless, if Plaintiff fails to establish the existence of an element essential to his case on which he bears the burden of proof at trial, the court will determine that there is no genuine dispute over material facts. ***See Celotex Corp.,*** 477 U.S. at 322-23.

**III.    Analysis.**

**A.    Defendant DeCesaro's Motion to Dismiss.**

Defendant DeCesaro is a Step III Grievance Officer.  (Amd. Compl., p. 4). Plaintiff's only allegations against Defendant DeCesaro are that he ultimately denied Plaintiff's grievances and delayed responding to Plaintiff's grievances, which "left [Plaintiff] in immediate danger of physical harm."  (Amd. Compl., p. 8).

Plaintiff's claims are brought under **42 U.S.C. § 1983**, which provides:

---

[4]  Plaintiff's Amended Complaint is a verified complaint and, therefore, treated as a affidavit for purposes of this order.

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State, . . . subjects, or
> causes to be subjected, any citizen of the United States . . .
> to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the
> party injured in an action at law, suit in equity, or other
> proper proceeding for redress.

**42 U.S.C. § 1983.**

An individual cannot be held liable in a section 1983 action unless he caused or

participated in an alleged constitutional violation. ***McKee v. Heggy***, 703 F.2d 479, 483

(10th Cir. 1983). Respondeat superior is not within the purview of section 1983 liability.

***Id.*** In order for a supervisor to be liable under section 1983, there must exist a causal

connection or an affirmative link "between the constitutional deprivation and either the

supervisor's personal participation, his exercise of control or direction, or his failure to

supervise." ***Butler v. City of Norman***, 992 F.2d 1053, 1055 (10th Cir. 1993); ***see also***

***Rizzo v. Goode***, 423 U.S. 362, 371 (1976). Without a showing of direct responsibility

for the alleged violations, liability will not be imposed on a supervisory official. ***Id.***

Plaintiff does not allege that Defendant DeCesaro in any way could have

initiated a transfer for Plaintiff or otherwise protect him from the violence he suffered at

the hands of the 2-11 gang. Plaintiff attempts to hold DeCesaro liable solely on the

basis that he denied Plaintiff's grievances and allegedly delayed providing Plaintiff with

a response. However, Plaintiff's grievance was based solely on a transfer request, for

which Defendant DeCesaro was not responsible.

In his Step III Grievance, Plaintiff states: "Though no physical harm has been

done to me, I have experienced anxiety, depression, insomnia, etc., as a direct result of

the potential risks to my safety."   (Amd. Compl, ex. 3).  Defendant DeCesaro

responded and concluded that "housing placement is not . . . grievable." (Id.).  Even if

the Step III Grievance indicated a specific threat to Plaintiff's safety, there is no

indication that Defendant DeCesaro had control over Plaintiff's safety or housing

placement.  Defendant DeCesaro cannot be held liable for an alleged constitutional

violation for which he was not directly responsible, and his Motion to Dismiss should be

granted.

### B.      State Defendants' Motion for Summary Judgment/Motion to Dismiss.

### 1.      Qualified Immunity.

The State Defendants insist that they are entitled to qualified immunity, barring

claims brought against them in their individual capacities.  Plaintiff's claims against the

State Defendants are brought against them solely in their individual capacities.[5]

Because the Defendants asserted qualified immunity as an affirmative defense, Plaintiff

"initially bears a heavy two-part burden."  **Romero v. Board of County Comm'r,** 60

F.3d 702, 704 (10th Cir.1995) (quoting **Albright v. Rodriguez,** 51 F.3d 1531, 1534 (10th

Cir.1995)).  Indeed, Plaintiff must show (1) "that the defendant[s'] actions violated a

constitutional or statutory right" and (2) that the right "allegedly violated [was] clearly

established at the time of the conduct at issue."  **Id.**  In other words, Plaintiff must

articulate with specificity the clearly established constitutional right violated and the

Defendants' conduct which violated that right.  **Id.**

---

[5] *See* Plaintiff's Motion to Dismiss Claims Against Each Defendant in His/Her Official Capacity [#85], filed September 7, 2006: ". . . the defendants are only sued in their individual capacities."

Here, Plaintiff states as follows: ". . . defendants, individually and jointly, acted with deliberate indifference to the fact that [Plaintiff] was a known target of the 2-11 Crew prison gang," and "that defendants' deliberate indifference equates to a violation of his right to be free from cruel and unusual punishment as guaranteed by the Eighth Amendment to the U.S. Constitution." (Amd. Compl., p. 2). Indeed, the deliberate indifference of a prison official "to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan,* 511 U.S. 825, 828 (1994). "Prison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (citation omitted, alteration in original).

However, to establish a cognizable Eighth Amendment claim for failure to protect, the Plaintiff "must show that he [was] incarcerated under conditions posing a substantial risk of serious harm, the objective component, and that the prison official was deliberately indifferent to his safety, the subjective component." *Benefield v. McDowall,* 241 F.3d 1267, 1271 (10th Cir.2001).

      *a.*      *Objective Component.*

To satisfy the objective component of a deliberate indifference claim arising under the Eighth Amendment, "the alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension." *Self v. Crum,* 439 F.3d 1227, 1230 (10th Cir. 2006). "[T]he purpose for this requirement is to limit claims to significant, as opposed to trivial, suffering." *Mata v. Saiz,* 427 F.3d 745, 753 (10th Cir. 2005). "Consequently, [courts] are to look to the alleged injury claimed by the prisoner, and ask 'whether that harm is sufficiently serious.'" *Kikumura v. Osagie,* —F.3d—, 2006 WL 2578805, at *19 (10th Cir. 2006) (citing *Id.*).

13

In order to satisfy the objective component of an Eighth Amendment violation, an inmate must therefore show "that he is incarcerated under conditions posing a *substantial risk of serious harm.*"  ***Farmer,*** 511 U.S. at 834 (emphasis added).  The Supreme Court has rejected the notion that the Eighth Amendment does not reach official conduct that "is sure or very likely to cause" serious injury at the hands of other inmates. ***Helling v. McKinney,*** 509 U.S. 25, 33 (1993) ("We have great difficulty agreeing that prison authorities may not be deliberately indifferent to an inmate's current health problems but may ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year."); ***accord Ramos v. Lamm***, 639 F.2d 559, 572 (10th Cir.1980) ("[A]n inmate does have a right to be reasonably protected from constant threats of violence and sexual assaults from other inmates).  In fact, an inmate does not need to wait until he is actually assaulted before obtaining relief.  ***Ramos,*** 639 F.2d at 572.  Therefore, a risk of harm may be sufficient to establish the objective component of an Eighth Amendment violation.  ***See Benefield v. McDowall*** 241 F.3d 1267, 1272 (10th Cir. 2001). Indeed, the Eighth Amendment may be implicated not only to physical injury, but also by the infliction of psychological harm. ***Id.*** The actual extent of any physical injury, threats or psychological injury is pertinent in proving a substantial risk of serious harm.

In his verified Amended Complaint, Plaintiff states that as a result of Defendants' deliberate indifference to the fact that he was a known target of the 2-11 gang, Plaintiff was "forced to live day in and day out with a real and persistent fear of attack." (Amd. Compl., p. 2).  Because Plaintiff had been attacked physically, sexually, and psychologically by the same gang prior to arriving at SCF, his fear of attack was indeed

14

real and substantiated.  At this point, construing Plaintiff's *pro se* pleadings liberally*,*
*see Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991), and in a light most
favorable to him, Plaintiff's allegations are sufficient to establish the objective
component of his claim.

>    **b.    Subjective Component.**

Next, before liability can be imposed, Plaintiff must show that the Defendants
were "'aware of facts from which the inference could be drawn that a substantial risk of
serious harm exists' and that they drew the inference." *Craig v. Eberly*, 164 F.3d 490,
495 (10th Cir.1998).  Plaintiff must do more than establish that Defendants should have
known of the risk of harm.  *Id.,* 164 F.3d at 495.  Rather, Plaintiff must present evidence
supporting an inference that Defendants actually knew about a substantial risk of
serious harm to his safety.  *Oxendine v. Kaplan*, 241 F.3d 1272, 1277 (10th Cir.2001).
Deliberate indifference requires that the Defendants' conduct is "in disregard of a
known or obvious risk that was so great as to make it highly probable that harm would
follow," or that the conduct "disregards a known or obvious risk that is very likely to
result in the violation of a prisoner's constitutional rights."  *Berry v. City of Muskogee*,
900 F.2d 1489, 1494 (10th Cir.1990).

The mere showing of simple, or even heightened, negligence does not establish
that Defendants were subjectively aware of the risk.  Subjective awareness requires
that the Defendants "must both be aware of facts from which the inference could be
drawn that a substantial risk of serious harm exists, and he must also draw the
inference."  *Craig,* 164 F.3d at 495.  Plaintiff must establish that Defendants knew that
he faced a substantial risk of harm and disregarded that risk "'by failing to take

reasonable measures to abate it.'" *Hunt v. Uphoff,* 199 F.3d 1220, 1224 (10th Cir.

1999) (quoting *Farmer,* 511 U.S. at 847).

> ### i.   Defendant Backer.

According to Plaintiff's Amended Complaint, Defendant Backer "knew" that

Plaintiff had been approached by the 2-11 Crew and feared for his safety, but that

Backer was deliberately indifferent to the risks.  These allegations satisfy the pleading

requirements of Rule 8(a) for the subjective component of a deliberate indifference

claim.  **FED. R. CIV. P. 8(a)** (requiring a "short and plain statement" of claims).

However, even when Eighth Amendment claims meet the pleading requirements

of Rule 8(a), those claims should still be dismissed when "it appears beyond doubt that

the plaintiff can prove no set of facts in support of his claim which would entitle him to

relief.  *Conley,* 355 U.S. at 45-46.  Since the subjective component of deliberate

indifference is based on the prison official's state of mind, it is "a question of fact

subject to demonstration in the usual ways, including inference from circumstantial

evidence."  *See Farmer,* 511 U.S. at 842 (defining "deliberate indifference" standard as

equal to "recklessness," in which "a person disregards a risk of harm of which he is

aware.").  Howard is not required to plead specific facts demonstrating a defendant's

culpable state of mind.  *See, e.g., Kikumura,* 2006 WL 2578805, at * 21.

Plaintiff identifies specific facts in his Amended Complaint from which a jury

could infer that Defendant Backer knew about the substantial risk of harm to Plaintiff

posed by the 2-11 Crew.  Howard claims that he informed Defendant Backer that two

inmates housed at the SCF were in contact with 2-11 Crew members at FCF, who

allegedly had threatened him previously and "forced him into prostitution."  (Amd.

Compl., p. 7).  On or about April 27, 2005, Plaintiff was transferred to SCF Living Unit

33.  Immediately upon his arrival at Unit 33, Plaintiff saw a 2-11 gang member from

FCF whom he recognized.  That inmate approached Plaintiff on the recreation yard and

advised him that a FCF 2-11 gang member named "Ghost" had a friend housed at SCF.

Plaintiff claims that "Ghost" was responsible for harassment and abuse he suffered at

FCF.  Plaintiff claims he immediately reported this conversation to Defendant Backer,

advising him that two inmates at SCF were in contact with 2-11 gang members at FCF.

Plaintiff claims that he specifically told Backer that the inmates had contact with Ghost,

but that Backer "did not follow procedure" and "did not report the potential threat" to

Plaintiff's safety.

On April 27, 2005, Plaintiff filed a Step I Grievance against Defendant Backer, a

case manager at SCF, asking to be transferred to a different housing unit because he

had been approached by a 2-11 gang member while residing at SCF-East.  Plaintiff

states in his Step I Grievance that "Mr. Backer attempted to blame [him] for the

[confrontation by 2-11 gang members] telling [him] that [he] should have maintained a

'low profile.'"  Mr. Backer further asserted that absolutely nothing could or would be

done to prevent harassment unless [Plaintiff] provided a taped statement against the 2-

11 gang members."  (Amd. Compl., Ex. 1).  Defendant Backer explained that if Plaintiff

would provided a taped statement, Plaintiff could be placed in Administrative

Segregation because the taped statement would place Plaintiff in danger.  Plaintiff

refused "out of fear of retaliation" but placed Defendants on notice he wished to be

moved back to SCF-West.  Defendant Backer concluded that Plaintiff "did not feel

threatened at this time" and that Plaintiff was merely informing him that 2-11 gang

17

members were present at the facility.  (Id.).

It is well established that "'a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'"  *Kikumura,* 2006 WL 2578805, at *21 (quoting *Farmer,* 511 U.S. at 842).  A jury could therefore infer from the alleged "obviousness" of the risk to Plaintiff that Defendant Backer knew of a significant risk of harm.  Indeed, Plaintiff's allegation that Defendant Backer tried to blame him "for the situation" because Plaintiff did not maintain a "low profile" could lead a jury to infer that Defendant Backer not only inferred that there was a risk of harm to Plaintiff, but that he chose to do nothing because Plaintiff was, in Defendant Backer's mind, at least partially to blame for making his presence known to the gang.  (Amd. Compl., p. 7 & Ex. 1).  Therefore, it is recommended that the court find and conclude that Plaintiff's allegations within his complaint are sufficient to satisfy the subjective component of his deliberate indifference claim against this Defendant.

As for Defendant's alternate Motion for Summary Judgment, Defendant Backer has the burden of showing the absence of a genuine issue of material fact.  *Celotex Corp.,* 477 U.S. at  325.  Construing the factual record, in particular Plaintiff's verified Amended Complaint, and any reasonable inferences therefrom in a light most favorable to the Plaintiff, *Blue Circle Cement, Inc.,* 27 F.3d at 1503, Howard has presented evidence suggesting a genuine factual dispute as to whether Defendant Backer was subjectively aware of a substantial risk of harm to Plaintiff.  Therefore, it is recommended that Defendants' Motion for Summary Judgment be denied as to Defendant Backer.

### ii.    Defendant Clarkson.

18

With respect to Defendant Clarkson, Howard claims that Clarkson denied Plaintiff's Step I Grievance against Backer, which included information about Plaintiff's history with the 2-11 Crew at FCF, the recent interactions with two 2-11 gang members at SCF, and Plaintiff's fear of harm at the hands of the Crew if he remained in SCF-East.  Plaintiff claims that Defendant Clarkson denied the grievance stating: "it was determined that [Plaintiff] did not feel threatened at this time, but were (sic) informing us of the 2-11 members that were present on the East Side."  Further, Defendant Clarkson told Plaintiff that "[w]e cannot keep you away from all 211 members" and that "facility placement is classification and cannot be grieved."  (Amd. Compl., p. 7).

Again, jury could infer from the alleged "obviousness" of the risk to Plaintiff being housed on the lower security SCF East that even though the prison could not "keep him away from all 211 gang members" the risk was greater on SCF-East, as opposed to SCF-West.  A jury could infer, given Plaintiff's prior history with the gang at FCF and his interactions with 2-11 Crew members on SCF-East, that the risk to him was so obvious that Defendant Clarkson should have been aware of it and indeed was so aware. Therefore, I recommend that the District Court find that Plaintiff's allegations are sufficient to satisfy the subjective component of his deliberate indifference claim against this Defendant.  Further, because Plaintiff has presented evidence suggesting a sufficient factual disagreement as to whether Defendant Clarkson was subjectively aware of a substantial risk of harm to Plaintiff, it is recommended that Defendants' Motion for Summary Judgment should be denied as to Defendant Clarkson.

### iii.    Defendant Halligan.

With respect to Defendant Halligan, Plaintiff claims that he "had the details and

history of Plaintiff's assaults, sexual assaults, forced prostitution, extortion, and threats

based on the events at [FCF] which required Plaintiff's transfer to [SCF] . . . Plaintiff did

personally advise them of the details/events when he met with them shortly after filing

his Step I grievance." (Resp., p. 7).  Plaintiff claims that Defendant Halligan admitted,

generally, that threats exist in a prison, but that Plaintiff would have to learn to adapt to

them.  In fact, Defendant Halligan told him that SCF was a "prison and not a

playground" and that Plaintiff would "have to learn to live" with threats.  (Amd. Compl., p

8).  Defendant Halligan then added that "crime just doesn't pay."  (Id.)

Based on the foregoing, Plaintiff's allegations could lead a jury to infer that

Defendant Halligan was aware of threats and risks to Plaintiff, and that consciously

chose to ignore the threats to Plaintiff because  "crime just doesn't pay."  Again, Plaintiff

has presented a sufficient factual basis upon which a jury could infer that Defendant

Halligan was subjectively aware of risks to Plaintiff's safety, but ignored those risks.

Therefore, I recommend that the District Court find that Plaintiff's allegations are

sufficient to satisfy the subjective component of his deliberate indifference claim

against this Defendant.  Further, because Plaintiff has presented evidence suggesting

a sufficient factual disagreement as to whether Defendant Halligan was subjectively

aware of a substantial risk of harm to Plaintiff, it is recommended that Defendants'

Motion for Summary Judgment be denied as to Defendant Halligan.

### iv.      Defendants Waide, Cox-Bergman and Negley.

With respect to the remaining Defendants, Defendants Cox-Bergman and

Negley merely handled and reviewed Plaintiff's Step II/III Grievances, both of which

requested transfers.  On or about May 27, 2005, Plaintiff filed a Step II Grievance,

which was initially assigned to Defendant Cox-Bergman, a manager at SCF, for a response.  Defendant Cox-Bergman assigned the Step II Grievance to Defendant Negley, a captain at SCF, for a response, who responded that Plaintiff did not "get to select CDOC facility placement."

In his Step II and III Grievances, Howard did not mention specific, substantial threats to his safety, but rather raised concerns about potential threats if he identified by name the 2-11 Crew members whom he feared.  (Amd. Compl., Ex. 2/3).  Unlike the claims against Backer, Clarkson, and Halligan, Plaintiff does not present any facts suggesting that Defendants Cox-Bergman and Negley were aware of a risk, other than the fact that they reviewed his Step II and III Grievances.

With respect to Defendant Waide, Plaintiff claims that because he was "directly responsible for any relocation of Plaintiff . . . [Defendant Waide] had personal and direct knowledge of a substantial risk of harm."  Plaintiff provides no other reasoning to establish his burden of showing Defendant Waide's subjective awareness of threats to Plaintiff.[6]  Plaintiff does not indicate that he ever spoke to Defendant Waide about the threats.

It is not so obvious from the Step II/Step III Grievances alone that Plaintiff faced

---

[6] In his Response, Plaintiff claims that after January, 2006, Defendants Cox-Bergman and Waide had direct knowledge of him being extorted and assaulted and continued to be deliberately indifferent to the threats, extortion, and assault.  However, the date of Plaintiff's Step I Grievance, from which the court determines which claims were exhausted, was April 27, 2005, well before January, 2006.  At the time Plaintiff filed his initial Step I Grievance, Plaintiff presents no factual allegations or evidence suggesting that these Defendants were aware of and deliberately indifferent to risks to Plaintiff.  Nor does Plaintiff later include any inference of their wrongdoing in his Step II/III Grievances.  Plaintiff's allegations in his Response are too attenuated to be related to his initial Step I Grievance.  Therefore, it is not clear that Plaintiff has exhausted his claims against these Defendants.

a real and substantial threat of harm from the 2-11 Crew.  Rather, the Grievances indicate a desire to be transferred because of the gang's presence.  They do not describe Plaintiff's prior history with the 2-11 Crew at FCF.  Plaintiff has failed to establish the subjective component of deliberate indifference with respect to these Defendants, and, therefore, has failed to establish an Eighth Amendment claim of deliberate indifference.  Therefore, it is recommended that the District Court find that Defendants Waide, Cox-Bergman, and Negley are entitled to qualified immunity and are shielded from liability for Plaintiff's claim against them.

## 2.    Exhaustion.

The State Defendants claim that Plaintiff has failed to show total exhaustion, claiming that Plaintiff exhausted only one of three potential claims.  Defendants move for summary judgment/to dismiss on exhaustion grounds, claiming that Plaintiff did not exhaust his "third claim" for relief.  The Prison Litigation Reform Act ("PLRA") governs Plaintiff's claims.  **42 U.S.C.  § 1997e(a).**  The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  **42 U.S.C. § 1997e(a);**  **_Booth v. Churner,_** 532 U.S. 731, 735 (2002).

Plaintiff's supposed "third claim" is in reality a request for injunctive relief, not a separate claim.  Therefore, Defendants' request to dismiss Plaintiff's Amended Complaint on exhaustion grounds for failure to exhaust Plaintiff's "third claim" should be denied.  Indeed, Plaintiff has specifically plead exhaustion as to his remaining and sole

claim against Defendants Backer, Clarkson, and Halligan in his Amended Complaint and has attached copies of the administrative proceedings.  *See Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204,1211 (10th Cir. 2003) ( "[A] prisoner must provide a comprehensible statement of his claim and also either attach copies of administrative proceedings or describe their disposition with specificity." ); *Ross v. County of Bernanillo,* 365 F.3d 1181, 1184 (10th Cir. 2004) (holding that "in the absence of particularized averments concerning exhaustion showing the nature of the administrative proceeding and its outcome, the action must be dismissed under § 1997(e)").

Notably, Plaintiff does not mention Defendants Clarkson and Halligan–whom are not protected by qualified immunity–until his Step II Grievance.  However, inmates are not required to specifically identify each wrongdoer in their initial grievance. *Kikumura,* 2006 WL 2578805, at *12  (recognizing the difficulties prisoners face in trying to amend their grievances to identify additional defendants or in providing new information about their claims).  Indeed, the purpose of the PLRA's exhaustion requirement is to provided prison officials the time and opportunity to address complaints internally, and "to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle,* 534 U.S. 516, 524-25 (2002).  "Inmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures." *Johnson v. Testman,* 380 F.3d 691, 697 (2d Cir. 2004).

In his Step II Grievance, Howard specifically mentions Defendants Halligan and Clarkson by name, placing prison officials on notice of his potential claims against

them.  Although Howard did not mention these two initially, perhaps Plaintiff's best attempt to identify any possible malfeasance was through the grievance process itself and by calling on prison officials to take action to prevent any further harm to him.  ***See Kikumura,*** 2006 WL 2578805, at *11-12.  When it became clear after filing his Step I Grievance that these Defendants would not be willing to assist Plaintiff with a transfer to a safer section of the prison, Howard specifically referred to them in his Step II Grievances.  By including these Defendants in his Step II Grievance, Howard sufficiently placed Defendants on notice, providing the Defendants an opportunity to investigate and resolve the complaint internally even without specifically identifying wrongdoers.  Therefore, its is recommended that the court find and conclude that Plaintiff exhausted his claim against each of the remaining Defendants – Backer, Clarkson, and Halligan.  Further, it is recommended that Defendants' Motion to Dismiss on exhaustion grounds should be denied.

Therefore,

**IT IS RECOMMENDED** as follows:

1.      Defendant DeCesaro's Motion to Dismiss First Amended Complaint [#53], filed June 1, 2006, **BE GRANTED;**

2.      Defendants Broaddus, Waide, Cox-Bergman, Negley, Clarkson, Halligan, and Backer's Motion for Summary Judgment, or in the Alternative, Motion to Dismiss Amended Complaint [#66], filed July 10, 2006, **BE GRANTED** to the extent it seeks to bar Defendants Waide, Cox-Bergman, and Negley from liability on qualified immunity grounds;

3.      Defendants Broaddus, Waide, Cox-Bergman, Negley, Clarkson, Halligan, and Backer's Motion for Summary Judgment, or in the Alternative, Motion to Dismiss Amended Complaint [#66], filed July 10, 2006, **BE DENIED** to the extent it seeks to bar Defendants Backer, Clarkson, and Halligan from liability on qualified immunity grounds; and **BE DENIED** to the extent these Defendants seek to dismiss Plaintiff's claims against them on exhaustion grounds; and

4.      That Defendants DeCesaro, Broaddus, Waide, Cox-Bergman, and Negley **BE DROPPED** from this action.

## IV.     Advisement to the Parties

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  **28 U.S.C. § 636(b)(1); FED. R. CIV. P.  72(b)**;  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).

The district judge shall make a *de novo* determination of those specific portions of the proposed findings or recommendations to which a specific objection is made.  **28 U.S.C. § 636(b)(1)**.  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  ***See In re Griego***, 64 F.3d at 583;  ***United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma***, 73 F.3d 1057, 1060 (10th Cir. 1996).  The district judge may accept, reject, or modify, in whole or in part, the findings or

recommendations made by the magistrate judge.  **28 U.S.C. § 636(b)(1)**.

"[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." ***One Parcel of Real Property***, 73 F.3d at 1060.  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  ***See Vega v. Suthers***, 195 F.3d 573, 579-80 (10th Cir. 1999) (district court's decision to review a magistrate's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  ***One Parcel of Real Property***, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review);  ***International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.***, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate's order, cross-claimant had waived its right to appeal those portions of the ruling);  ***Ayala v. United States***, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate's ruling).

DATED at Denver, Colorado, this 3rd day of October, 2006.

BY THE COURT:

*s/Craig B. Shaffer*
Craig B. Shaffer
United States Magistrate Judge

26