IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 06–cv–00282–EWN–CBS


SCOTT L. HOWARD,

      Plaintiff,

v.

MAJOR LLOYD WAIDE, individually,
MAJOR MARY COX-BERGMAN, individually,
CAPTAIN MICHAEL NEGLEY, individually,
CAPTAIN JOHN R. CLARKSON, individually,
LIEUTENANT HALLIGAN, individually,
LIEUTENANT DAVID A. BACKER, individually,
ANTHONY A. DECESARO, individually,

      Defendants.

---

### ORDER CONCERNING MAGISTRATE JUDGE'S RECOMMENDATION

---

This is a *pro se* civil rights action arising under 42 U.S.C. § 1983 ("section 1983"). Plaintiff Scott L. Howard, an inmate in the custody of the Colorado Department of Corrections ("CDOC"), alleges that Defendants Waide, Cox-Bergman, Negley, Clarkson, Halligan, Backer, and DeCesaro's deliberate indifference to a substantial risk of serious harm broached Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment in violation of section 1983. Plaintiff seeks compensatory and punitive damages.

Pursuant to 28 U.S.C. § 636(b)(1)(A) and United States District Court for the District of Colorado Local Rule 72.1, I referred the matter to Magistrate Judge Craig B. Shaffer for pretrial

case management and to make recommendations on dispositive motions.  (General Order of

Reference to United States Magistrate Judge [Including Dispositive Motions] [filed Mar. 13,

2006].)  On October 3, 2006, the magistrate judge filed his recommendation on the following

motions: (1) "Defendant DeCesaro's Motion to Dismiss First Amended Complaint" (#53), filed

June 1, 2006; and (2) "State Defendants' Motion for Summary Judgment, or in the Alternative,

Motion to Dismiss Amended Complaint" (#66), filed July 10, 2006.  Jurisdiction is premised upon

28 U.S.C. §§ 1331, 1343.

## FACTS

### 1.      *Factual Background*

The facts of this case are set out in detail in the magistrate judge's October 3, 2006

recommendation.  (Recommendation of United States Magistrate Judge [filed Oct. 3, 2006]

[hereinafter "Mag. Rec."].)  I briefly sketch the facts relevant to those aspects of the magistrate

judge's recommendation to which objections have been made.  Because the summary judgment

motion at issue in this case relies exclusively upon the facts as set forth in Plaintiff's Amended

Complaint and the exhibits appended thereto, I refer directly to the Amended Complaint's

allegations and exhibits rather than the summary judgement motion's statement of facts.

### a.      *Relevant Parties*

Plaintiff is an inmate of the CDOC.  (First Am. Civil Rights Compl. Pursuant to 42 U.S.C.

§ 1983 [filed May 26, 2006] [hereinafter "Am. Compl."].)  Defendant DeCesaro is a CDOC Step

Three Grievance Officer.  (*Id.* ¶ 18.)  Defendant Backer serves as a CDOC case manager at

Sterling Correctional Facility ("SCF").  (*Id.* ¶ 17.)  Plaintiff was assigned to Defendant Backer

between April and August 2005.  (*Id.*)  Defendants Clarkson and Halligan also serve as case managers at SCF.  (*Id.* ¶¶ 15, 16.)

### b.    Background: Incidents at Fremont Correctional Facility

Plaintiff was sent to Fremont Correctional Facility ("FCF") after his conviction for "numerous theft charges" and federal tax code violations "via technical penetration of corporate computer systems."  (*Id.* ¶ 22.)  These crimes garnered a degree of media attention.  (*Id.*)  At FCF, members of "the 2-11 Crew prison gang" (the "Gang") approached Plaintiff to explore his willingness to perpetrate further such crimes for the benefit of the Gang.  (*Id.* ¶ 24.)  Thereafter, Gang members began extorting money from Plaintiff and eventually Plaintiff "was forced into prostitution."  (*Id.* ¶¶ 26–27.)  Plaintiff was sexually assaulted "approximately three" times at FCF.[1]  (*Id.* ¶ 27.)  Plaintiff reported his situation and received a transfer to SCF "for the sole purpose of" protecting him from the Gang.  (*Id.* ¶ 28.)

### c.    Grievances

On April 27, 200, after spending two apparently uneventful months in various units at SCF, Plaintiff was transferred to Living Unit thirty-three.  (*Id.* ¶ 31.)  That day, a Gang member who recognized Plaintiff from FCF approached Plaintiff and advised him that Ghost, a Gang member at FCF, had a friend housed at SCF.  (*Id.*)  On the same day, Plaintiff told Defendant Backer that two SCF inmates had contact with Ghost, reporting that Ghost was the Gang member at FCF who had extorted Plaintiff, threatened him with violence, forced him into prostitution, and

---

[1]Plaintiff does not indicate whether his assailants were Gang members.

attempted to recruit Plaintiff to assist the Gang in criminal activities.  (*Id.* ¶ 32.)  Defendant

Backer did nothing.  (*Id.*)

On the same day, Plaintiff filed a Step One Grievance against Defendant Backer,

explaining:

> [When] I was housed at FCF . . . members of the [Gang] began actively recruiting
> me for the purpose of assisting a [G]ang leader retain defense counsel for his
> federal case(s).  My attorneys alerted [the] FCF warden . . . of the situation . . .
> [and] I was transferred to SCF-West on March 1, 2005. . . .  On April 27, 2005, I
> was transferred to L[iving] U[nit] [thirty-three], SCF-East, which is a minimum
> restrictive status.  Immediately, I became aware that [two] individuals on SCF-
> East are in contact w[ith] [Gang] members at FCF.  I brought the situation to the
> attention of [Defendant] Backer and made him privy to all related facts and
> history. [Defendant] Backer attempted to blame me for the situation telling me I
> should have maintained "a low profile."  [Defendant] Backer further asserted that
> absolutely nothing could or would be done to prevent harassment unless I
> provided a taped statement against the [Gang] members.  Then, he advised me, I
> would be placed on Administrative Segregation.  That statement was taken as a
> threat of Admin[istrative] Seg[regation]/Punitive conditions if I gave a statement.
> I refused to give a statement and/or provide names out of fear of retaliation.
> However, [Defendant] Backer and SCF/[CDOC] are hereby placed on notice of
> the situation and will be liable should mental or other injury result from their
> deliberate indifference.  I wish to be moved back to SCF-West, L[iving] U[nit]
> Two].

(*Id.*, Ex. 1 at 2 [Step One Grievance].)  On May 24, 2005, Defendant Clarkson denied the

grievance, stating:

> Following a meeting in my office that included you, [Defendant] Backer, and
> myself, among others, it was determined that you did not feel threatened at this
> time, but were informing us of the presence of the [Gang] members that were
> present [in SCF-East].  I explained to you that you do not have to make a tape to
> get separated from any custody issues that you may have, but we do have to have
> names. . . .  If we move you somewhere to get you away from them, we could
> move them [sic] right into your cell. . . .  We cannot keep you away from all
> [Gang] members.  We do not place inmates in Administrative Segregation to
> protect them from other inmates, so that is not an option, either. . . .  You told us

> you have not been threatened, at this point, and we would not want to take a chance by moving you into a unit where there could be problems. The remedy you are asking is to be moved back to L[iving] U[nit two]. Facility placement is a classification and cannot be grieved.

(*Id.*, Ex. 1 at 2 [Step One Denial].)  Defendant Halligan was also present at the meeting referenced in this denial. (*Id.* ¶ 34.)  Defendant Halligan advised Plaintiff that SCF "is a prison and not a playground" and that Plaintiff would "have to learn to live with it." (*Id.*)

On May 27, 2005, Plaintiff filed a Step Two Grievance, arguing that his placement in Living Unit thirty-three was contrary to the facility's classification system and asserting that if he were placed in Living Unit one, two, three, or four, he would have no contact with Gang members. (*Id.*, Ex. 2 at 1 [Step Two Grievance].)  Plaintiff emphasized that Defendants Clarkson and Halligan "told me I would eventually be required to provide a taped statement against [G]ang members if I named them.  This places me in danger. . . .  I still request to be moved to [Living Unit one, two, three, or four]." (*Id.*)  On June 9, 2005, a grievance officer responded: "You do not get to select CDOC facility placement.  [Defendant] Clarkson adequately explained why you are not to be moved if we do not know who you have problems with.  He also explained you do not have to provide a taped statement.  Your requested move is denied." (*Id.*, Ex. 2 at 2 [Step Two Denial].)

On June 11, 2005, Plaintiff filed a Step Three Grievance, asserting: "Both [Defendants] Clarkson and [] Halligan advised me that I would be required to provide a taped statement subsequently [sic] to my initial disclosure of the names of [the Gang] members." (*Id.*, Ex. 3 at 1 [Step Three Grievance] [emphasis in original].)  Plaintiff continued: "Though no physical harm

has been done to me, I have experienced anxiety, depression, insomnia, etc[.] as a direct result of the potential risks to my safety.  I should not be subjected to such risks when a solution is easily obtainable. . . .  I request a transfer to another CDOC facility for my protection and to ease anxiety." (*Id.*)  Although regulations required an answer within forty-five days, Plaintiff did not receive a response until February 2, 2006.  (*Id.* ¶ 36.)  In the response, Defendant DeCesaro wrote:

> [I]t is my finding that requiring you divulge names of other offenders who are harassing you is a safeguard to prevent any offender from making up such accusations when it is their desire to just [sic] get moved.  Housing placement is a classification matter and is not grievable.  I therefore cannot recommend any relief in this matter.

(*Id.*, Ex. 3 at 2 [Step Three Denial].)

Between May and August 2005, Plaintiff paid in excess of $2,500 in "extortion fees" to Gang members.  (*Id.* ¶ 38.)  In early August 2005, a known Gang member approached Plaintiff and demanded twenty-five dollars per week in "rent."  (*Id.* ¶ 40.)  Approximately six days later, a known Gang member showed Plaintiff a letter from Ghost authorizing the "rent" fee and ordering Plaintiff to pay the fee "with his ass."  (*Id.* ¶ 41.)  Approximately three days later, Plaintiff was beaten and sexually assaulted by a Gang member.  (*Id.* ¶ 42.)  Plaintiff did not report the incidents for fear of retaliation and because "staff had thus far not expressed any interest in assisting him . . . [and] referred to [him] as a 'whiner.'"  (*Id.*)  Shortly thereafter, a Gang member forced Plaintiff into a sexual encounter with a "third party inmate" while the Gang member kept watch for security.  (*Id.* ¶ 43.)  It appears that this incident also went unreported.

On August 23, 2005, Plaintiff was transferred to Tennessee via the Interstate Agreement on Detainers.[2]  (*Id.* ¶ 44.)  On October 5, 2005, Plaintiff was returned to SCF.  (*Id.* ¶ 45.)  In November 2005, Plaintiff resided in Living Unit two, where Gang members yet again sought to persuade him to commit financial crimes.  (*Id.*)  At this time, Plaintiff began cooperating with federal authorities and CDOC investigators regarding the Gang's criminal activities at SCF.  (*Id.* ¶ 50.)

**2.      *Procedural History***

On February 17, 2006, Plaintiff commenced this action by filing a *pro se* complaint in which he asserted claims against a variety of CDOC officials ("CDOC Officials") and Defendants Waide, Cox-Bergman, Negley, Clarkson, Halligan, Backer, and DeCesaro ("CDOC Defendants"). (Civil Rights Compl. Pursuant to 42 U.S.C. § 1983 [filed Feb. 17, 2006].)  Plaintiff asserted two claims arising out the alleged failure of prison officials to protect him from physical assault, sexual assault, and extortion by a prison gang: (1) Count I under the Fourteenth Amendment; and (2) Count II under the Eighth Amendment.  (*Id.*)  Also on February 17, 2006, Plaintiff filed a motion for a preliminary injunction requesting a transfer to another correctional facility.  (Mot. for Prelim. Inj. [filed Feb. 17, 2006].)

After Plaintiff voluntarily dismissed CDOC Officials, Plaintiff filed a motion to amend his complaint.  (Order of Dismissal with Prejudice [filed Apr. 24, 2006]; Mot. for Leave to Amend

---

[2]This interstate agreement provides for the speedy resolution of outstanding charges against persons already incarcerated in other jurisdictions.  *See* 18 U.S.C.A. App. II § 2 (West 2007).

Compl. [filed May 8, 2006].)  On May 26, 2006, the magistrate judge recommended denial of Plaintiff's motion for a preliminary injunction and granted Plaintiff's motion to amend, but struck Plaintiff's Count I Fourteenth Amendment claim.  (Order [filed May 26, 2006].)

In his amended complaint, Plaintiff asserted claims against CDOC Defendants, each in his or her individual and official capacities, for infringements of his Eighth Amendment rights.  (Am. Compl.)  Plaintiff sought declaratory relief, a preliminary injunction, and compensatory and punitive damages.  (*Id.* at 17–18.)

On June 1, 2006, Defendant DeCesaro filed a motion to dismiss Plaintiff's claims against him, asserting: (1) he lacked the ability or authority to eliminate the constitutional deprivations Plaintiff asserted; and (2) he did not authorize, participate in, or supervise any constitutional deprivation.  (Mem. Br. in Supp. of Mot. to Dismiss First Am. Compl. [filed June 1, 2006] [hereinafter "DeCesaro Br."].)  On June 20, 2006, Plaintiff filed his response.  (Pl.'s Resp. to Def. DeCesaro's Mot. to Dismiss First Am. Compl. [filed June 20, 2006] [hereinafter "Pl.'s DeCesaro Resp."].)  On June 22, 2006, Defendant DeCesaro filed his reply.  (Def. DeCesaro's Reply to Pl.'s Resp. to Def. DeCesaro's Mot. to Dismiss First Am. Compl. [filed June 22, 2006] [hereinafter "DeCesaro Reply"].)

On July 10, 2006, CDOC Defendants filed their motion for "Summary Judgment, or in the Alternative, Motion to Dismiss Amended Complaint," asserting: (1) CDOC Defendants did not violate Plaintiff's rights by failing to provide him with an out-of-state placement; (2) Plaintiff obtained the relief he sought in his grievance; (3) CDOC Defendants are entitled to qualified immunity; (4) the amended complaint should be dismissed based on the "total exhaustion" rule;

and (5) Plaintiff failed to state a claim.  (Br. in Supp. of Mot. for Summ. J., or in the Alternative, Mot. to Dismiss Am. Compl. [filed July 1, 2006] [hereinafter "CDOC Defs.' Br."].)  On August 1, 2006, Plaintiff filed his response.  (Pl.'s Resp. to State Defs.' Mot. for Summ. J. [filed Aug. 1, 2006] [hereinafter "Pl.'s Resp. to CDOC"].)  On August 18, 2006, CDOC Defendants filed their reply.  (Reply in Supp. of Mot. for Summ. J. and to Dismiss [filed Aug. 18, 2006] [hereinafter "CDOC Defs.' Reply"].)

On September 7, 2006, Plaintiff filed a motion to dismiss his official capacity claims against all remaining Defendants.  (Pl.'s Mot. to Dismiss Claims Against Each Def. in His/Her Official Capacity [filed Aug. 7, 2006].)  Plaintiff also stated that "he does not now, nor will he ever, seek injunctive relief in this matter."  (*Id.*)  On October 4, 2006, the magistrate judge ordered that Plaintiff's September 7, 2006 motion "be treated as a clarification of his First Amended Complaint."  (Order [filed Oct. 4, 2006].)

On October 3, 2006, the magistrate judge issued his recommendation on Defendant DeCesaro's motion to dismiss and CDOC Defendants' motion for summary judgment.  (Mag. Rec.)  The magistrate judge recommended that Defendant DeCesaro's motion to dismiss be granted because Defendant DeCesaro lacked the power to remedy Plaintiff's alleged harms.  (*Id.* at 24.)  The magistrate judge further recommended that CDOC Defendants' motion be granted in part and denied in part.  (*Id.* at 24–25.)  He recommended that the motion be: (1) granted with respect to CDOC Defendants Waide, Cox-Bergman, and Negley on qualified immunity grounds; (2) denied with respect to the issue of the qualified immunity of CDOC Defendants Backer, Clarkson, and Halligan; and (3) denied with respect to CDOC Defendants' exhaustion arguments.

(*Id.*)  Finally, the magistrate judge recommended that Defendants DeCesaro, Broaddus, Cox-Bergman, and Negley be dropped from the case.  (*Id.* at 25.)

On October 11, 2006, Plaintiff objected to the magistrate judge's recommendation concerning Defendant DeCesaro.  (Pl.'s Objection to the Recommendation of the U.S. Magistrate Judge Regarding Def. DeCesaro's Mot. to Dismiss [filed Oct. 11, 2006] [hereinafter "Pl.'s Obj."].)  Specifically, Plaintiff asserts that the magistrate judge's recommendation "stands at variance with the evidence and applicable case law" because Defendant DeCesaro knew of the danger of leaving Plaintiff in his correctional facility placement and chose to ignore Plaintiff's grievances in violation of CDOC regulations.  (*Id.* at 2–4.)  Defendant DeCesaro filed no response to Plaintiff's objections.

On October 11, 2006, CDOC Defendants Backer, Clarkson, and Halligan (collectively "SCF Defendants") objected to the magistrate judge's recommendations on two grounds, asserting: (1) Plaintiff's failure to cooperate with the investigation of his grievances precludes a finding of exhaustion; and (2) SCF Defendants are entitled to qualified immunity because they could not be deliberately indifferent to Plaintiff's vague allegations.  (Objections to Recommendation of United States Magistrate Judge [filed Oct. 11, 2006] [hereinafter "Defs.' Obj."].)  On October 17, 2006, Plaintiff responded to SCF Defendants' objections.  (Pl.'s Resp. to Def.'s [sic] Objection [sic] to Recommendation of U.S. Magistrate Judge [filed Oct. 17, 2006] [hereinafter "Pl.'s Resp. to Defs.' Obj."].)

**ANALYSIS**

*1.      Standard of Review*

Plaintiff appears *pro se*.  Consequently, this court will liberally construe his pleadings and other papers, holding them to a less stringent standard than formal papers filed by attorneys. *Trackwell v. United States Govt.*, 472 F.3d 1242, 1243 (10th Cir. 2007).

*a.      Review of Magistrate Judge's Recommendation*

The standard of review this court applies in considering a magistrate judge's determinations in a case depends upon the nature of the underlying motion at issue.  "Federal magistrate[] [judges] are creatures of statute, and so is their jurisdiction."  *NLRB v. A-Plus Roofing, Inc.*, 39 F.3d 1410, 1415 (9th Cir. 1994).  Section 636 of Title 28 of the United States Code delineates the scope of jurisdiction and authority granted to magistrate judges by Congress. 28 U.S.C.A. § 636 (West 2007); *see Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1461 (10th Cir. 1988).  Pursuant to the statute, magistrate judges may issue orders on non-dispositive pretrial motions, but may only make proposed findings of fact and recommendations on dispositive motions.  *See* 28 U.S.C.A. § 636(b)(1)(A)–(C) (West 2007); *First Union Mortg. Corp. v. Smith*, 229 F.3d 992, 995 (10th Cir. 2000).

District courts review magistrate's orders concerning non-dispositive motions under a "clearly erroneous or contrary to law" standard.  28 U.S.C.A. § 636(b)(1)(A) (West 2007); Fed. R. Civ. P. 72(a) (2006).  Under the clearly erroneous standard of review, the magistrate judge's findings should not be rejected merely because the court would have decided the matter differently.  *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985).  Rather, the district court

must affirm the decision of the magistrate judge unless "on the entire evidence[, the district court] is left with the definite and firm conviction that a mistake has been committed." *Ocelot Oil*, 847 F.2d at 1464 (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364 [1948]).

For dispositive motions, such as the motions presently at bar, district courts must make a "*de novo* determination of those portions of the . . . recommendations to which objection is made." 28 U.S.C.A. § 636(b)(1)(C) (West 2007); Fed. R. Civ. P. 72(b) (2006). In conducting a *de novo* review, the court should make an independent determination of the issues without giving special weight to the prior determination. *Ocelot Oil*, 847 F.2d at 1464. The district judge may follow a magistrate judge's recommendation or wholly ignore it and "'conduct the review in whole or in part anew.'" *Id.* (quoting *Mathews v. Weber*, 423 U.S. 261, 271 [1976]). Where specific factual findings are challenged, the district court must consider the actual testimony and not merely review the magistrate judge's report and recommendation. *Gee v. Estes*, 829 F.2d 1005, 1009 (10th Cir. 1987). "[W]hen a party objects to factual findings based upon conflicting evidence or testimony, the district court must indicate that it is conducting a *de novo* determination rather than review under the 'clearly erroneous' standard." *Id.* (citing *Aluminum Co. of Am. v. U.S. Envtl. Prot. Agency*, 663 F.2d 499, 502 [4th Cir. 1981]). In the case *sub judice*, the motions for dismissal and summary judgment were unquestionably dispositive motions. Accordingly, the court now performs a *de novo* review those portions of the magistrate judge's recommendations to which objections were raised.

**b.**     ***Rule 12(b)(6) Motion to Dismiss***

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6) (2006). For the purposes of a Rule 12(b)(6) motion, a court should only dismiss the claim "when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle him to relief, accepting the well-pleaded allegations of the complaint as true and construing them in the light most favorable to the plaintiff." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quoting *Yoder v. Honeywell, Inc.*, 104 F.3d 1215, 1224 [10th Cir. 1997]). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Id.* (quoting *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 [10th Cir. 1999]).

**c.**     ***Summary Judgment Standard***

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2006); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the

burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material

matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325).  The nonmoving

party may not rest solely on the allegations in the pleadings, but must instead designate "specific

facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P.

56(e).  A fact in dispute is "material" if it might affect the outcome of the suit under the governing

law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a

verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing

*Anderson*, 477 U.S. at 248).  The court may consider only admissible evidence when ruling on a

summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467,

1474 (10th Cir. 1985).  The factual record and reasonable inferences therefrom are viewed in the

light most favorable to the party opposing summary judgment. *Byers v. City of Albuquerque*, 150

F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

**2.      *Motion to Dismiss: Defendant DeCesaro***

Defendant DeCesaro's sole involvement in Plaintiff's case was his evaluation and rejection

of Plaintiff's Step Three Grievance.  In his motion to dismiss, Defendant DeCesaro asserted, *inter*

*alia*, that Plaintiff had failed to establish a causal connection between Defendant DeCesaro's

actions and the constitutional deprivation Plaintiff suffered.  (DeCesaro Br. at 5–6.)  Plaintiff

responded, asserting: (1) CDOC regulations required Defendant DeCesaro to investigate

Plaintiff's situation as one indicating a "potential and substantial risk to [Plaintiff's] life or safety;"

and (2) Defendant DeCesaro's delayed response to Plaintiff's grievance caused Plaintiff injury.

(Pl.'s DeCesaro Resp. at 3–10.)  Plaintiff objects to the magistrate judge's recommendation of

dismissal of his claims against Defendant DeCesaro by reiterating the same arguments he made in his response brief.  (*Compare* Pl.'s Obj at 2–4, *with* Pl.'s DeCesaro Resp. at 3–10.)  As set forth below, I find that Plaintiff's grievance allegations failed as a matter of law to put Defendant DeCesaro on notice of any substantial risk of serious harm at SCF.

The Supreme Court clarified the standards applicable to deliberate indifference claims in *Farmer v. Brennan*, 511 U.S. 825 (1994).  In *Farmer*, the Court set forth a two-pronged inquiry, comprised of objective and subjective components.  Under the objective inquiry, the alleged deprivation must be "sufficiently serious" to constitute a deprivation of constitutional dimension.  *Id.* at 834.  In addition, under the subjective inquiry, the prison official must have a "sufficiently culpable state of mind."  *Id.*

In describing the subjective component, the Court made clear a prison official cannot be liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.  The subjective component is akin to "recklessness in the criminal law," where, to act recklessly, a "person must 'consciously disregard' a substantial risk of serious harm."  *Id.* at 837, 839 (citing Model Penal Code § 2.02[2][e]).  "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence."  *Id.* at 842.  I will assume that Plaintiff's alleged deprivation satisfies the objective inquiry in order to focus on his failure to allege facts that satisfy the subjective inquiry.

Plaintiff does not assert that Defendant DeCesaro was aware of Plaintiff's history of brutal treatment by the Gang at FCF.  (Am. Compl., *passim*.)  None of Plaintiff's grievances suggest as much.  In his Step One Grievance, Plaintiff merely asserted that while at FCF, "members of the [Gang] began actively recruiting me for the purpose of assisting a gang leader retain defense counsel for his federal case(s)."  (*Id.*, Ex. 1 at 1 [Step One Grievance].)  In his Step Two Grievance, Plaintiff asserted only that providing a taped statement against Gang members "places me in danger."  (*Id.*, Ex. 2 at 1 [Step Two Grievance].)  In his Step Three Grievance, Plaintiff merely asserted: "[t]hough no harm has been done to me, I have experienced anxiety, depression insomnia, etc[.] as a direct result of the potential risks to my safety."  (*Id.*, Ex. 3 at 1 [Step Three Grievance].)  Rather than highlight the extortion, physical and sexual assault, and forced prostitution Plaintiff suffered at FCF, Plaintiff's grievances, even when liberally construed, merely suggest that Plaintiff feared that Gang members might once again approach him to recruit him for criminal activities.  Such allegations hardly suggest a credible, "substantial risk of serious harm." *See Farmer*, 511 U.S. at 837.  Moreover, even if Defendant DeCesaro was aware of Plaintiff's plight at FCF, Plaintiff's vague grievance allegations of events that transpired at SCF — which carry no suggestion of imminent danger — simply do not give rise to an inference that the risk of serious harm that existed at FCF persisted at SCF. *See Kikumura v. Osagie*, 461 F.3d 1269, 1294 (10th Cir. 2006) (stating that *pro se* Eighth Amendment Plaintiffs can "undermine their own case by asserting facts incompatible with a deliberate indifference claim").  Such an absence of allegations suggesting a "substantial risk of serious harm" moots the impact of any delay in

considering Plaintiff's Step Three Grievance.  As such, Plaintiff's claim against Defendant DeCesaro fails.

**3.      Motion for Summary Judgment: SCF Defendants**[3]

     **a.      Qualified Immunity and Deliberate Indifference**

A brief review of the relevant law will frame the substance of the parties' arguments on the issues of qualified immunity and deliberate indifference.  Once a defendant asserts a defense of qualified immunity, a plaintiff must (1) allege facts showing a violation of a constitutional right, and (2) show that the right was clearly established at the time the defendant acted.  *Kirkland v. St. Vrain Valley Sch. Dist.*, 464 F.3d 1182, 1188 (10th Cir. 2006).  As set forth above, it is well-settled that the Eighth Amendment requires prison officials to "provide humane conditions of confinement," which includes taking "reasonable measures to guarantee the safety of the inmates," such as protecting inmates "from violence at the hands of other prisoners."  *See Farmer*, 511 U.S. at 832–33, 834 (quotations omitted).  A prison official violates this right when the inmate is imprisoned under conditions posing an objectively substantial risk of serious harm, and the official acted with "deliberate indifference" to the inmate's health or safety.  *Id.* at 834; *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003).  An official exhibits "deliberate indifference" when he was subjectively aware of the substantial risk posed by the inmate's circumstances and failed to take reasonable steps to ensure his safety.  *Id.*

---

[3]As noted above, the court refers to Defendants Halligan, Backer, and Clarkson collectively as "SCF Defendants."

The magistrate judge determined SCF Defendants were not entitled to qualified immunity. (Mag. Rec. at 16–20.)  SCF Defendants object, pointing to their inability to investigate Plaintiff's vague report to Defendant Backer and vague Step One Grievance.  (CDOC Defs.' Obj. at 8–15.) SCF Defendants mistakenly frame much of their argument as one concerning qualified immunity: "[Plaintiff] fails to identify any case law supporting the notion that a prison official violates the rights of a prisoner when the prisoner absolutely fails to provide information that might allow the official to evaluate the allegation and act. . . ."  (*Id.* at 13.)  The true focus of this line of argument is deliberate indifference.  SCF Defendants cannot dispute that *Farmer*'s articulation of a right "to be free from violence at the hands of other prisoners" is precisely the clearly established right Plaintiff is invoking.  The real dispute centers on how this right applies to the facts of this case. *See Kikumura*, 461 F.3d at 1296–97 (reframing party's similarly misfocused qualified immunity argument to address deliberate indifference).  For the reasons set forth below, I find that Plaintiff did not allege a colorable Eight Amendment claim.  Accordingly, I must reject the magistrate judge's recommendation and grant summary judgment in favor of SCF Defendants.

I will again assume Plaintiff's allegations satisfy the objective aspect of the *Farmer* inquiry in order to focus on Plaintiff's failure to satisfy the subjective inquiry.  Even construing the evidence in Plaintiff's favor, it falls far short of supporting a reasonable determination that SCF Defendants either were subjectively aware of a substantial risk posed by Plaintiff's circumstances or failed to take reasonable steps to ensure Plaintiff's safety.  *See Farmer*, 511 U.S. at 834; *Verdecia*, 327 F.3d at 1175.  Significantly, Defendant Clarkson's denial of Plaintiff's grievance clearly indicates an absence of awareness of facts supporting knowledge of a substantial risk of

serious harm to Plaintiff: "*You told us you have not been threatened*, at this point, and we would not want to take a chance by moving you into a unit where there could be problems." (Am. Compl., Ex. 1 at 2 [Step One Denial] [emphasis added].) Plaintiff does not dispute that he had not been threatened at the time he consulted with SCF Defendants. (*See id.*, Ex. 2 at 1 [Step Two Grievance]; Pl.'s Resp. to CDOC; Pl.'s Resp. to Defs.' Obj.) This silence undermines a finding that SCF Defendants were subjectively aware of a substantial risk of serious harm risk to Plaintiff.

Of course, it is possible that a substantial risk of serious violence could exist absent Gang threats. While the evidence suggests that SCF Defendants were aware of the brutal treatment Plaintiff suffered at the hands of Gang members at FCF, Plaintiff's own factual assertions — both in the complaint and in his grievances — fail to support an inference that *he himself* believed that the Gang members who had approached him at SCF intended to continue this pattern of brutality, let alone that he made SCF Defendants aware of such a likelihood. Prior to filing his grievance, Plaintiff only told Defendant Backer that "two (2) [sic] inmates housed at the [sic] SCF . . . had contact with Ghost," the Gang member who allegedly spearheaded Plaintiff's brutalization at FCF. (Am. Compl. ¶ 32.) Plaintiff did not even go that far in his Step One Grievance, instead he merely alleged that: (1) Gang members at FCF had recruited him for "the purpose of assisting a [G]ang leader retain defense counsel;" and then (2) upon his arrival in Living Unit thirty-three, he "[i]mmediately became aware that [two] individuals on SCF-East are in contact w[ith] [Gang] members at FCF." (*Id.*, Ex. 1 at 1 [Step One Grievance].) Indeed, Plaintiff's Step One Grievance entirely fails to mention past violence at the hands of Gang members and only alludes to the vague possibility that he *might* suffer future "mental or other injury." (*Id.*; *see also id.*, Ex. 3 at 1 [Step

-19-

Three Grievance] [referring vaguely to "*potential* risks to [his] safety"] [emphasis added].)  Thus, at the time he made his concerns known to SCF Defendants, Plaintiff's own allegations suggest that any threat he felt was much more contingent than it was "substantial."

Plaintiff's failure to make allegations that apprised SCF Defendants of a serious, imminent risk to Plaintiff was decidedly compounded by his refusal to identify the SCF Gang members who had approached him.  "The prisoner must identify who is threatening him to allow the corrections officers a reasonable opportunity to protect the threatened prisoner from harm." *Matzker v. Herr*, 748 F.2d 1142, 1150 (7th Cir. 1984).  Indeed, "[i]n a case . . . such as this, to demonstrate the impending threat of harm such that a failure to act on knowledge of such harm would constitute deliberate indifference, *an inmate must communicate information to a prison official showing that a specific inmate or inmates pose a specific risk of harm to him*." *Smith v. Ullman*, 874 F. Supp. 979, 984 (D. Neb. 1994) (emphasis added).  An inmate's failure to identify those inmates from whom he seeks protection makes it extremely difficult — if not impossible — for prison officials to assess the inmate's concern and decide if the concern suffices to invoke the Supreme Court mandate to "'take reasonable measures to guarantee the [inmate's] safety. . . .'" *Farmer*, 511 U.S. at 832–33 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 [1984]).

When Plaintiff alerted SCF Defendants of his contact with two Gang members in SCF-East, SCF Defendants took the reasonable step of asking who the two Gang members were so that they could assess the risk those inmates posed to Plaintiff and respond accordingly.  Plaintiff

refused to identify the Gang members.[4]  Plaintiff's refusal to cooperate precluded SCF Defendants

from initiating a reasonable, practicable investigation of Plaintiff's claims.  As SCF Defendants

rightly state: "Knowledge of [the danger] was peculiarly in [Plaintiff's] hands.  He . . . elected not

to provide that information at any time before he was . . . attacked.  [SCF Defendants] cannot be

required to be clairvoyant." (Defs.' Obj. at 14.)  Simply put, Plaintiff cannot avail himself of the

grievance system, throw a monkeywrench into its gears, and then decry its failure to serve him.

*See Smith*, 874 F. Supp. at 984–85 (holding, where plaintiff refused to identify inmate who

threatened him for fear of reprisal by that inmate, plaintiff precluded a meaningful investigation

such that prison officials could not have acted with deliberate indifference to risk of attack by the

very inmate who plaintiff refused to identify).  Consequently, Plaintiff's claim of deliberate

indifference fails as a matter of law.

### b.    *Exhaustion*

Although SCF Defendants raised a number of arguments concerning exhaustion, I do not

address these arguments because: (1) their exhaustion arguments were chiefly targeted at

Plaintiff's subsequently withdrawn claim for injunctive relief; and (2) my finding that Plaintiff

failed to allege facts suggesting that SCF Defendants acted with deliberate indifference moots the

import of questions of exhaustion.

---

[4] Indeed, Plaintiff refused to identify them at every subsequent step in the grievance process.  (*See* Am. Compl., Ex. 2 at 2 [Step Two Denial], Ex. 3 at 2  [Step Three Denial].)

*4.*     *Conclusion*

Based on the foregoing it is therefore ORDERED that:

1.      The magistrate judge's recommendation (#90) is accepted in part and rejected in

part.  The magistrate judge's recommendation is ACCEPTED with respect to:

a.      The determination that Defendant DeCesaro's motion to dismiss (#53)

should be granted; and

b.      The uncontested determination that Defendants' motion for summary

judgment (#66) should be granted to the extent the court found Defendants

Waide, Cox-Bergman, and Negley to be immune from liability based on

qualified immunity.

2.      The magistrate judge's recommendation is REJECTED in all other aspects.

3.      As set forth in above, Defendants' motion for summary judgment (#66) is

GRANTED with respect to Defendants Clarkson, Halligan, and Backer.

Defendant DeCesaro's motion to dismiss (#53) is GRANTED.

4.      The clerk shall forthwith enter judgment in favor of Defendants and against

Plaintiff, dismissing all claims with prejudice.

Dated this 28th day of March, 2007.

BY THE COURT:


s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge